IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

GARY W. SAYRE,                    )
                                  )
        Plaintiff,                )
v.                                )        Civil Action No. 5:04-0333
                                  )
FMRS MENTAL HEALTH                )
COUNCIL, INC.,                    )
                                  )
        Defendant.                )

PROPOSED FINDINGS AND RECOMMENDATION

Pending are Defendant's Motion for Summary Judgment (Document No. 62.) and Plaintiff's Motion for Summary Judgment (Document No. 65.). Based upon a thorough examination of the documents of record and applicable law, the undersigned concludes and hereby respectfully recommends that Defendant's Motion for Summary Judgment be granted and Plaintiff's Motion for Summary Judgment be denied.

PROCEDURAL HISTORY AND BACKGROUND

On April 6, 2004, Plaintiff, a psychologist and acting *pro se*, filed his "Statement of Complaint," in which he alleges that he was wrongfully terminated from his position at FMRS Mental Health Council, Inc. [FMRS].[1] (Document No. 1.) Plaintiff states that on February 5, 2001, he was hired by Defendant, FMRS, as a therapist, and contends that he was terminated on February 8, 2001, in a discriminatory manner due to his age and sex.[2] (Id.). On May 6, 2004, Plaintiff filed his "Motion

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

[2] Plaintiff further contended that FMRS defamed his character in proceedings before the West Virginia Human Rights Commission. FMRS moved to dismiss Plaintiff's defamation claim (Document No. 8.), and the Court granted FMRS's Motion and dismissed that claim by Order filed on March 24, 2005 (Document No. 18.)

for Amendment," in which he includes a statement of the relief sought by his Complaint. (Document No. 5.) Plaintiff seeks compensatory damages in the amount of $4,742.00[3] and punitive damages in the amount of $100,000.00. (Id.) By Standing Order, this matter was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 3.)

On June 21, 2004, FMRS filed its Answer to the Plaintiff's Complaint as amended. (Document No. 7.) FMRS admits that it hired Plaintiff as a therapist on February 5, 2001, and discharged Plaintiff from his employment on February 8, 2001. FMRS further admits that it hired a female who was forty years old and younger than Plaintiff to fill the therapist position which Plaintiff was hired to fill. FMRS also admits allegations respecting proceedings before the West Virginia Human Rights Commission. FMRS denies the remainder of the allegations contained in Plaintiff's Complaint as amended and states a number of defenses affirmatively. (Id.)

On December 15, 2005, FMRS filed a Motion for Summary Judgment and a Memorandum in Support. (Document Nos. 62 - 63.) FMRS begins by stating that Plaintiff was an at-will employee of FMRS. He was 47 years old at the time of his discharge, and about two months after his discharge FMRS hired Ms. Balfour who was 38 years old. At about that same time, Plaintiff went to work as a teacher at Mount Olive Correctional Complex. (Document No. 63, pp. 3 - 4.) FMRS states that Plaintiff has the burden of proving in the first place that "but for the defendant's discriminatory motive, he would not have been terminated from his employment at FMRS." (Id., p. 4.) Upon doing so, Plaintiff is considered to have made a *prima facie* case of discrimination, and the burden then shifts to FMRS to demonstrate a legitimate non-discriminatory reason for its actions. (Id.) If FMRS does so, then, as

---

[3] Plaintiff claims that he is entitled to $4,250, the amount he would have received in payment for teaching at two colleges if he had not gone to work at FMRS, and $492, the additional amount which FMRS should have paid him for a second week of work at FMRS, for a total of $4,742.

2

FMRS states, the burden shifts again to the Plaintiff to prove that the non-discriminatory reason which FMRS offers is really a pretext for its discriminatory motive. (Id.) FMRS proceeds with an analysis of the facts in view of applicable law asserting that Plaintiff cannot produce evidence that FMRS discriminated against him on the basis of gender or age. (Id., pp. 5 - 12.) But even if he can, FMRS contends that it had a legitimate, non-discriminatory reason for terminating Plaintiff's employment because he "engaged a client in an unauthorized therapeutic discussion wherein Mr. Sayre indicated that proponents advocating for the legalization of marijuana had some valid arguments." (Id., p. 13.) FMRS argues further that Plaintiff can prove no compensatory damages. (Id., at pp. 14 - 15.) FMRS attaches the following documents to its Memorandum: a copy of portions of the transcript of Plaintiff's deposition (Exhibit A.); the Affidavit of Michael Mays, FMRS's Chief Executive Officer (Exhibit B.); a copy of Plaintiff's responses to certain Interrogatories and Requests for Admission (Exhibit C.); and the Affidavit of Kathy Armentrout, Associate Director of FMRS (Exhibit D.).

On December 15, 2005, the undersigned gave Plaintiff notice of his right to file a response to FMRS's Motion for Summary Judgment pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). (Document No. 64.)

On December 16, 2005, Plaintiff filed a Motion for Summary Judgment. (Document No. 65.) Plaintiff states that "FMRS declined to provide the plaintiff with any reason for his termination from FMRS, either at the time the plaintiff was in training with FMRS (2/5/01 to the morning of 2/8/01) or anytime thereafter." (Id., pp. 1 - 2.) Plaintiff indicates, however, that the reason is evident from the following documents a copy of which is attached to Plaintiff's Motion as referenced:

1.  A February 8, 2001, letter from Kathy Armentrout to Michael Mays (Appendix A.);

2.  FMRS's answer to the Bureau of Employment Program's inquiry respecting Plaintiff's termination as set forth in the Bureau of Employment Program

3

Deputy's March 6, 2001, Decision Appendix F.);

3.    A February 27, 2001, letter to FMRS from Robert Richardson, Plaintiff's attorney at the time, to Mr. Mays and FMRS's attorney John Molleur's March 2, 2001, letter in response (Appendix C, Exhibits A and B.); and

4.    FMRS's February 19, 2002, answer and reply to the West Virginia Human Rights Commission (Appendix E.)).

It appears that Plaintiff requests that the Court grant summary judgment based upon inferences which he draws from inconsistencies or discrepancies which he finds in the documents. Plaintiff first notes that Associate Director Armentrout stated in her February 8, 2001, letter to CEO Mays that "[p]er our conversation for the past two days, I have concern that Mr. Sayre is not a good fit for our organization, especially in the field of addiction treatment and in-home services connected to the federal grant." Plaintiff then notes that FMRS stated in responding to his Interrogatory No. 3 that "a therapist advised Kathy Armentrout regarding concerns as to the plaintiff's work and opinions with respect to drug use. After conducting her own inquiries to her satisfaction, Ms. Armentrout then spoke to Mr. Mays regarding this, and the decision was made to terminate the plaintiff. All of these discussions took place on February 8, 2001."[4] Plaintiff points out that Ms. Armentrout stated that there were "conversations for the past two days" and FMRS's response to his Interrogatory No. 3 stated that "[a]ll of these discussions took place on February 8, 2001." Plaintiff states that "[t]he inconsistency is blatant." (Document No. 65, p. 2.) Plaintiff then refers to FMRS's Reply in proceedings before the West Virginia Human Rights Commission where FMRS stated that "a client first made FMRS management aware of Mr. Sayre's remarks" and points out that FMRS stated in responding to his Interrogatory No. 3 that "a therapist advised Kathy Armentrout regarding concerns as to the plaintiff's work and opinions

---

[4] Plaintiff includes a copy of FMRS Responses to his Combined Discovery Requests among the documents in Appendix C attached to his Motion.

4

with respect to drug use."[5] Plaintiff states that FMRS's later statement that a therapist disclosed the circumstances which led to the termination of his employment when FMRS stated earlier that a client did so constitutes "[a]nother blatant inconsistency or discrepancy." (Id., p. 3.) It appears that Plaintiff further contends that FMRS's statement that it did not know that Plaintiff held views potentially contrary to FMRS's policies prior to his employment "is not a factual statement" because during his interview on January 5, 2001, he discussed the differences between "pure research open-mindedness" and "successful therapeutic methodology of Alcoholics Anonymous and its 12-Step program" with his interviewers, Bill Short and Dreama Tabor, and they regarded him "highly recommended" for the position. (Id.) Finally, Plaintiff contends that if he actually made some remark to a client indicating that it was appropriate to use marijuana, he "should have been fired for professional misconduct." (Id.) FMRS indicated in proceedings before the West Virginia Human Rights Commission, however, that Plaintiff was terminated for "unsatisfactory job performance." (Id., pp. 3 - 4.) Plaintiff states that "[a]ll in all, the plaintiff was not terminated for professional misconduct – that is, for all of these statements/claims by FMRS in the above referenced documents of Kathy Armentrout, Michael Mays, Brian Morrison and John T. Molleur – because these statements/claims are false, invalid, and/or fabrications of the events that befell the plaintiff upon his hire and termination from FMRS." (Id., p. 4.) Respecting the February 27, 2001, letter to FMRS from Robert Richardson, Plaintiff's attorney at the time, to Mr. Mays and FMRS's attorney John Molleur's March 2, 2001, letter in response, Plaintiff states that in its March 2, 2001, letter "FMRS states a number of critical remarks that are central to the plaintiff's evidentiary argument, and subsequently these remarks again reflect the defendant's complete lack of evidence for its contention that the plaintiff's termination was not due to pretextual or discriminatory reasons." (Id., p. 4.) Plaintiff discusses several statements contained in the March 2,

---

[5] Plaintiff includes a copy of this document in Appendix E.

2001, letter, and focuses upon the statement contained in the latter that "[a]s a side note, Mr. Sayre's employment history is well known to this law firm, and it appears that Mr. Sayre's employment application with FMRS contained inaccurate information."[6]   (Id., pp. 4 - 5.) Respecting FMRS's February 19, 2002, answer and reply to the West Virginia Human Rights Commission, Plaintiff states that the two documents contain contradictory statements of when FMRS hired Ms. Balfour and where she was designated to work. (Id., p. 5.) Plaintiff submits that while it appears from one document that FMRS hired Ms. Balfour in April, 2001, it appears from the other that FMRS hired Ms. Balfour to work in Summers County, West Virginia, before it hired Plaintiff to work in Monroe County. (Id.) Plaintiff then compares Ms. Armentrout's March, 2001, Recommendation Letter to Mr. Mays respecting Ms. Balfour and FMRS's Letter of Position Offering to her with Ms. Armentrout's February, 2001, Recommendation Letter to Mr. Mays respecting Plaintiff and FMRS's Letter of Position Offering to him. (Id., p. 6.) Plaintiff notes in this comparative analysis that he and Ms. Balfour were hired for the same type of therapist position but Ms. Balfour was given the title "Federal Grant Therapist" and he was given the title "Substance Abuse Therapist." (Id.) Plaintiff further notes that the Letter of Position Offering to Ms. Balfour was dated after Ms. Armentrout's Letter of Recommendation to Mr. Mays but the Letter of Position Offering to him pre-dated Ms. Armentrout's Letter of his Recommendation. (Id.) Plaintiff states as follows in conclusion (Id., p. 7.):

> In conclusion, then, there is not only a preponderance of the evidence for the plaintiff's position but many of these facts presented are clear and convincing evidence for the plaintiff's arguments/analyses/proofs that the plaintiff was adversely treated by FMRS in his brief employment with FMRS and that he was wrongfully terminated due to age and sex discrimination. The plaintiff does not argue whether or not FMRS is a discriminatory institution by structure or institutional organization, having any type of historical or statistical documentation to evidence whether or not it may or may not engage in discriminatory employment practices, as any of information of this nature

---

[6] This document is attached to Plaintiff's Motion for Summary Judgment (Document No. 65.) at Appendix C, Exhibit B.

would neither negate nor support the individual events and circumstances that befell the plaintiff upon his hire, his adverse tenure, and abrupt termination by and from FMRS, i.e., the plaintiff can only present to this Court the prima facie facts and evidence essential to the plaintiff's case, wherein the plaintiff has given this Court these facts as they exist at present to Motion this Court for Summary Judgment and award to the plaintiff the relief being sought.

On December 27, 2005, Plaintiff filed a Memorandum in Response to Court Order for Summary Judgment, Dated 12/15/05. (Document No. 66.) Plaintiff indicates that he received the Court's December 15, 2005, Order notifying him of his right to respond to FMRS Motion for Summary Judgment (Document No. 64.) on December 19, 2005, but did not receive FMRS's Motion. Plaintiff states that he was confused by this and requests the Court's advice.

On January 3, 2006, FMRS filed a Memorandum in Response to Plaintiff's Motion for Summary Judgment. (Document No. 67.) FMRS contends that in seeking summary judgment, Plaintiff does not focus upon the facts in view of the legal standard for proving discrimination but rather engages in "speculation, inference, and conjecture" and "has looked beyond his own burden of proof . . . in order to persuade this Court that FMRS must produce evidence of its non-discriminatory motives in discharging Mr. Sayre." (Id., pp. 2 - 3.) FMRS proceeds to discuss Plaintiff's arguments on the basis of documents and contend that they provide no basis for summary judgment in his favor.    On January 10, 2005, Plaintiff, having received FMRS's Motion for Summary Judgment on December 27, 2005, filed a Response to Defendant's Motion for Summary Judgment and Memorandum of Law in Support of Defendant's [sic] Motion for Summary Judgment. (Document No. 69.) Basically, Plaintiff continues his argument on the basis of inaccuracies and inconsistencies in statements of FMRS's administrators and attorneys. Plaintiff challenges FMRS's assertion that he has admitted that he does not know what motivated FMRS to terminate his employment and has no evidence to refute FMRS's non-discriminatory reason. Plaintiff states "[w]ell, if the plaintiff has brought charges against FMRS for

7

being discharged for age and sex discrimination, and that any other reasons for his termination given by FMRS are thereby pretextual, then of course the plaintiff knows the motivating factor behind his termination." He argues that FMRS's characterization of the discussion which Plaintiff had with an FMRS client as "an unauthorized therapeutic discussion" is inaccurate. Rather, he claims that he "allowed the client to reflect on the negative impact of the legalization of marijuana not only for the client but for the public in general." Plaintiff states as follows:

> [T]his dialogue took place on Monday morning, Feb. 5th, 2001, the first day of the plaintiff's hire; at the defendant's own admission, Kathy Armentrout did not discuss this dialogue with Mr. Michael Mays till Thursday, Feb. 8th, 2001,, the morning that the plaintiff handed in to Mrs. Armentrout his letter of acceptance of the therapists position (which he hadn't received till Wednesday evening, Feb. 7th) and which he was then terminated approximately an hour later; if a matter of such grave and serious importance was enough for defendant to terminate the plaintiff, a professional in his field, it is not possible for such a matter to take three full days to be decided upon in the mind of Kathy Armentrout, especially since Mrs. Armentrout offered no discussion of the matter to the plaintiff, either on the days the plaintiff still worked at FMRS and had even been introduced to the DHHR staff of Greenbrier county as the new therapist for Monroe county, nor even at the meeting with the plaintiff and Michael Mays on February 16th, a meeting Mrs. Armentrout was asked to attend and did not.

Plaintiff states that the reason FMRS advances for terminating his employment is " a pretext for the real reason the plaintiff was terminated, which was because FMRS wanted to get rid of the plaintiff because they wanted a younger, female therapist by the name of Juliet Balfour." Plaintiff further asserts that FMRS's Motion for Summary Judgment contains an inconsistency of a factual nature in that FMRS's counsel states that Plaintiff was hired to work in Monroe County and Mr. Mays states in his Affidavit that he was hired to work in Summers and Monroe Counties. Plaintiff states that "[i]n conclusion, then, the plaintiff has not only produced evidence sufficient to provide this Court with a prima facie case of age and sex discrimination against FMRS, but has indeed shown that the defendant does not have any valid, legitimate and non-pretextual reasons for discharging the plaintiff."

On January 17, 2005, FMRS filed a Reply Memorandum of Law in Support of its Motion for

Summary Judgment. (Document No. 70.) FMRS states that "charges of discrimination are not evidence of the same." (Id., p. 3.) Quoting from Plaintiff's deposition testimony, FMRS states that Plaintiff has admitted that he did not know what motivated FMRS to terminate him and has acknowledged having a conversation with a client of FMRS about the legalization of marijuana and rationalizing its use. FMRS points out again that Plaintiff was an at-will employee and it needed no reason to terminate him. FMRS states further that Plaintiff has produced no evidence that it terminated his employment so that it could hire Ms. Balfour and finally returns to its contention that Plaintiff has no cognizable compensatory damages.

## THE APPLICABLE STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322 - 23, 106 S.Ct. at 2552 - 53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 - 48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

9

## ANALYSIS

The United States Supreme Court established a burden-shifting framework for determining

whether a plaintiff's employment was terminated on the basis of unlawful discrimination in McDonnell

Douglas Corp. v. Green, 411 U.S. 792, 802 - 805, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[7] The plaintiff

has the burden of presenting evidence in the first place in four categories from which it can be inferred

that his employment was terminated based upon unlawful discrimination. When a Plaintiff alleges age

discrimination, he or she will be deemed to have established a preliminary inference or *prima facie*

case of unlawful discrimination if he or she demonstrates that (1) he or she is a member of a protected

class[8]; (2) he or she was qualified for the job and met the employer's expectations; (3) he or she was

discharged despite his qualifications and performance; and (4) he or she was replaced by a

substantially younger individual with comparable qualifications.[9] Warch v. Ohio Casualty Insurance

---

[7] The Age Discrimination in Employment Act, 29 U.S.C. §§ 621 - 634, which was adopted in 1967, provides at Section 623(a)(1) that "[i]t shall be unlawful for an employer – (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]"

[8] Individuals over forty years old are members of the protected class. *See* 29 U.S.C. § 631(a).

[9] Several Courts have stated that a "substantially younger individual" is one who is younger than the plaintiff by a certain number of years. *See Grosjean v. First Energy Corp.*, 349 F.3d 332, 340 (6th Cir. 2003), *cert. denied*, 541 U.S. 1010, 124 S.Ct. 2069, 158 L.Ed.2d 620 (2004)(A replacement who is six or less years younger in age than the plaintiff is not substantially younger.); *Hoffman v. Primedia Special Interest Publications*, 217 F.3d 522, 524 (7th Cir. 2000)(A ten year difference in ages is presumptively substantial, and a difference of less than ten years is presumptively insubstantial. The plaintiff may rebut the presumption by producing evidence that age was a factor in the employer's decision to terminate the plaintiff's employment.); *DeBord v. Washington County School Board*, 340 F.Supp.2d 710, 714 (W.D.Va. 2004)("[T]he greater the age disparity between a replacement and a terminated employee, the stronger the inference of discrimination."); *Jeffers v. Thompson*, 264 F.Supp.2d 314, 328 (D. Md. 2003)(A replacement eleven years younger is substantially younger, but one five years younger probably is not.). In *O'Connor v. Consolidated Coin Caterers Corporation*, 517 U.S. 308, 313, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996), the United States Supreme Court stated that an inference that an

10

Company, 435 F.3d 510, 513 (4th Cir. 2006). When a plaintiff establishes a *prima facie* case of age discrimination by presenting evidence in each of the four categories, the burden shifts to the employer to produce evidence of a legitimate, non-discriminatory reason for the termination. Warch, 435 F.3d at 513 - 514. If the employer does so, the inference as shown by the plaintiff is refuted, and the burden shifts back to the plaintiff to demonstrate that the legitimate, non-discriminatory reason advanced by the employer is a pretext for unlawful discrimination. Warch, 435 F.3d at 514.

When the plaintiff establishes a *prima facie* case initially by presenting evidence in each of the four categories, the burden of production shifts to the employer. The burden of persuasion remains with the plaintiff at all times. Reeves v. Sanderson Plumbing Products., Inc., 530 U.S. 133, 143, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000). The plaintiff, therefore, has the initial burden of presenting evidence sufficient to raise an inference of discrimination and ultimately has the burden of proving that the termination of his or her employment occurred on the basis of unlawful discrimination and not on the basis of any other reason which the employer has stated. "The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." Reeves, 530 U.S. at 153, 120 S.Ct. at 2111. Thus, to prevail when an employer moves for summary judgment, the plaintiff "must produce direct evidence of a stated purpose to discriminate and/or circumstantial evidence of sufficient probative force to reflect a genuine issue of material fact." Goldberg v. B. Green and Company, Inc., 836 F.2d 845, 848 (4th Cir. 1988).

---

employment decision was based upon discrimination "cannot be drawn from the replacement of one worker with another worker insignificantly younger. Because the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class."

It is clear from the decision of the Fourth Circuit Court of Appeals in <u>Proud v. Stone</u>, 945 F.2d 796 (4th Cir. 1991), that circumstances very much like those in the instant case allow an inference that the plaintiff was not a victim of age discrimination. Mr. Proud applied for an accounting position with the Department of the Army at the age of 68. Mr. Proud was hired by Mr. Robert Klauss, who was in charge of a Central Accounting Division, as Chief Accountant and began work on June 14, 1985. Due to problems with Mr. Proud's work performance, Mr. Klauss discharged him on October 28, 1985. Mr. Proud's position was filled about 1 ½ years later by the promotion of a 32 year old. The Fourth Circuit stated that "in cases where the hirer and the firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer. While we can imagine egregious facts from which a discharge in this context could still be proven to have been discriminatory, it is likely that the compelling nature of the inference arising from the facts such as these will make cases involving this situation amenable to resolution at an early stage." <u>Proud</u>, 945 F.2d at 797 - 798. The Court further stated that "[t]he relevance of the fact that the employee was hired and fired by the same person within a relatively short time span comes at the third stage of the analysis. To reiterate in only slightly different terms what has previously been discussed, this fact creates a strong inference that the employer's stated reason for acting against the employee is not pretextual. The plaintiff still has the opportunity to present countervailing evidence of pretext, but in most cases involving this situation, such evidence will not be forthcoming. In short, employers who knowingly hire workers within a protected group seldom will be credible targets for charges of pretextual firing." <u>Proud</u>, 945 F.2d at 798. *See also* <u>Kess v. Municipal Employees Credit Union of Baltimore, Inc.</u>, 319 F.Supp.2d 637, 648 - 649 (D.Md. 2004).

The burden-shifting framework discussed above is applicable in gender discrimination cases

as well. <u>Texas Department of Community Affairs v. Burdine</u>, 450 U.S. 248, 252 - 256, 101 S.Ct.1089, 1093 - 1095, 67 L.Ed.2d 207 (1981). Absent direct evidence of gender discrimination, the plaintiff must produce evidence supporting an inference of gender discrimination. If he or she does so, the employer may rebut the inference by articulating a legitimate, non-discriminatory reason for the employment action which is the basis of the gender discrimination suit. If the employer does so, the plaintiff must prove that the employer's reason is a pretext for unlawful gender discrimination. Courts clearly recognize that males can claim gender discrimination just as females can. <u>Parrott v. Cheney</u>, 748 F.Supp. 312 (D.Md. 1989), *aff'd without opinion*, 914 F.2d 248 (4th Cir. 1990).

Respecting Plaintiff's claim of age discrimination, he was clearly a member of the protected class insofar as he was 47 years old when his employment was terminated. He was qualified to fill the position as FMRS found him to be in offering it to him. It appears, however, that Plaintiff did not meet FMRS's expectations and problems developed quickly with his performance. FMRS therefore discharged Plaintiff though it found him qualified for the position four days earlier and replaced him with Ms. Balfour who was 38 years old two months later. Though Plaintiff admits that he had a conversation with FMRS's client which FMRS found problematic, Plaintiff apparently disputes FMRS's characterization of the conversation. Giving Plaintiff the benefit of the doubt in view of the apparent factual dispute, the undersigned is disinclined to find that Plaintiff has failed to make a *prima facie* case of age discrimination because he did not meet FMRS's expectations respecting his performance. The undersigned is further disinclined to find that Ms. Balfour was not a "substantially younger" individual in view of the nine year difference between Plaintiff's and her age. The undersigned therefore concludes in considering the pending Motions for Summary Judgment that the material facts support an inference of age discrimination, *albeit* a weak one.

Moving on to the second and third stages of the analysis, FMRS states that it discharged

Plaintiff because he had an unauthorized conversation with a client about the legalization of marijuana. Plaintiff is required to demonstrate that this reason which FMRS gives for terminating his employment is pretextual. The undersigned finds that Plaintiff has failed to meet this requirement. The undersigned finds no direct evidence or any circumstantial evidence in the record of this case from which an inference may be drawn that Plaintiff's age was a determinative factor in FMRS's decision to terminate his employment four days after it began. Rather, the evidence indicates the contrary – FMRS was motivated to terminate Plaintiff's employment in view of his unauthorized conversation with an FMRS client and not on the basis of his age. Furthermore, inferences which may be drawn from the circumstances according to Proud and Kess, *supra*, support a conclusion that FMRS was not motivated to terminate Plaintiff's employment on the basis of unlawful age discrimination. Mr. Mays, FMRS's CEO, hired Plaintiff on February 5 and then terminated his employment four days later on February 8, 2001. Plaintiff, being 47, was a member of the protected class when he was hired. It may be implied that since Mr. Mays was obviously not inclined to consider Plaintiff's age in hiring him on February 5, he was therefore not inclined to regard Plaintiff's age a factor in terminating his employment four days later on February 8, 2001.

Respecting Plaintiff's gender discrimination claim, the undersigned likewise finds no evidence in the record that Plaintiff's gender was a determinative factor in FMRS's decision to terminate his employment. While Plaintiff was replaced by Ms. Balfour, a woman, FMRS has stated a legitimate, non-discriminatory reason as stated above for Plaintiff's termination, and Plaintiff has not produced direct evidence or circumstantial evidence of sufficient probative force indicating that FRMS was really motivated to terminate his employment on the basis of unlawful gender discrimination.

The undersigned can find nothing in Plaintiff's Motion for Summary Judgment (Document No. 65.) and Response to Defendant's Motion for Summary Judgment (Document No. 69.) and the

14

documents which Plaintiff attaches to them indicating that a genuine issue of material fact exists at the second and third stages of the analysis. FMRS claims that it terminated Plaintiff's employment because Plaintiff had an unauthorized conversation with a client of FMRS about the legalization of marijuana, and no inference or discrepancy which Plaintiff finds in the documents evidences any other reason. Whether Plaintiff had a "therapeutic discussion" or a dialogue with the client, whether Mrs. Armentrout took one day or two days to consider reports about Plaintiff's unauthorized conversation with the client, whether a client or a therapist informed Ms. Armentrout that the conversation occurred and whether Mr. Mays' Letter of Position Offering to Plaintiff pre-dated Ms. Armentrout's Letter of Recommendation are immaterial.  FMRS has articulated a legitimate, non-discriminatory reason for terminating Plaintiff's employment, and Plaintiff has produced no evidence to the contrary. The undersigned concludes, therefore, that FMRS's Motion for Summary Judgment should be granted and Plaintiff's Motion for Summary Judgment should be denied.

## PROPOSAL AND RECOMMENDATION

The undersigned hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS**, that the District Court **GRANT** FMRS's Motion for Summary Judgment (Document No. 62.), **DENY** Plaintiff's Motion for Summary Judgment (Document No. 65.) and remove this matter from the Court's docket.

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Joseph R. Goodwin. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have thirteen days (ten days, filing of objections and three days, mailing/service) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections

identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.) cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Goodwin, and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to Plaintiff, who is acting *pro se*, and to counsel of record.

ENTER: March 27, 2006.

R. Clarke VanDervort
United States Magistrate Judge

16